[Civ. No. 5680. Third Appellate District.—December 9, 1937.]

FLORENCE WINKIE et al., Appellants, v. TURLOCK IRRIGATION DISTRICT (a Public Corporation), Respondent.

W. Coburn Cook for Appellants.

Griffin and Boone for Respondent.

PULLEN, P. J.—The appellants herein are the widow and minor children of Horton Winkie, who brought this action for damages against the Turlock Irrigation District for his death by electrocution.

The Turlock Irrigation District is a corporation engaged in the business of generating and selling electrical energy, both within and without the boundaries of the Turlock Irrigation District. In the course of such business it had constructed a distribution system in the city of Turlock for the sale of electricity within that city.

On the date of his death Horton Winkie was employed by a house mover, and was assisting at that time in the moving of a house along one of the streets of the city of Turlock. One of the distributing lines of the irrigation district extended along a certain alley which intersected the

street along which the house was being moved and passed over this street by means of poles some 174 feet apart. On the highest cross-arms on these poles were strung four uninsulated copper wires; three of these wires carried electrical current of some 4,000 volts, and the fourth was a ground wire. The height above the ground of the four wires at a point where they rested on the cross-arms on the poles, was 29 feet. At the lowest point above the street they sagged to a point 27 feet, 6 inches above the ground. Upon these poles also was strung two insulated wires of 110 volts, which were 22 feet, 6 inches above the street; fourteen telephone wires at a lower level, and two guy wires. These two guy wires crossed each other some 18½ feet above the level of the street. The highest point of the house above the surface of the street when it was being moved was approximately 24 feet, some 3 feet below the lowest point of the high voltage wires.

It was the duty of the decedent, standing on the roof of the house, to so lift any sagging wires as to enable the house to be moved beneath the same. The guy wires, because of their tension, were difficult to handle, and it was while engaged with the guy wires that decedent apparently came in contact with the high voltage circuit and was electrocuted.

Two causes of action were set forth in the complaint; the first cause of action being that the Turlock Irrigation District's distribution system in the city of Turlock was not authorized by law, and therefore constituted a nuisance; and the second cause of action charged that the Turlock Irrigation District had been guilty of negligence in the construction, operation and maintenance of its distribution system.

Upon the trial plaintiff introduced evidence showing that on a certain date the Turlock Irrigation District applied to the city council of Turlock for a franchise to construct and maintain an electrical distribution system in the city of Turlock, and upon the same day a resolution granting such franchise was adopted by the city council, and that the purported franchise was later accepted by the irrigation district. It was also shown that a permit had been granted for moving the house along the public streets of the city of Turlock.

Plaintiff then offered in evidence an ordinance of the city of Turlock making it a misdemeanor to obstruct the use of a highway. Objection to introduction of this evidence was

sustained by the court, and plaintiffs were not permitted to introduce any further evidence on their first cause of action, and upon motion a nonsuit was granted as to the first cause of action.

Defendant opened its cause by offering in evidence a deposition of Florence Winkie, which had been taken on notice by the plaintiffs, in the state of New York. Objection to the introduction of this deposition was interposed on the ground that the certificate of the notary was not properly authenticated and the objection sustained. A continuance was requested to correct the certificate, and the court, over objection of plaintiffs, granted a continuance to October 31, 1933, and thereafter from time to time at the further request of defendant, and over plaintiffs' objection, until the cause was finally brought to trial in May, 1934.

It is the contention of appellants that the irrigation district had no franchise to erect its electrical distribution system in the city of Turlock, and that its system therefore constituted a nuisance, and being a nuisance the district was guilty of negligence *per se.*

Appellants further contend that the irrigation district violated certain safety rules of the California railroad commission, which also constituted negligence. It is conceded by appellants that the irrigation district was not subject to the rules of the railroad commission, but it was urged that these rules, as a matter of law, constitute the measure of ordinary care, and that the district in the erection of its electrical system did not conform to these rules, and therefore the question of ordinary care was removed from the determination of the jury, as such failure established negligence on the part of the respondent.

Examination of chapter 225, Statutes of 1923, discloses that every irrigation district has the right to construct, operate and maintain electric light and power lines along or upon any street, road or highway, provided that such irrigation district may not use any street within any city for such purposes unless the right so to use the same is granted by the governing body of such city, which shall have the right to impose reasonable conditions upon such use. It is apparent from a reading of this statute that the franchise for the district to operate its system comes not from the city but from the state, although the consent of the city must be obtained before such franchise is available within the limits

of such city. While it is true that in the acceptance of the irrigation district it is recited that " . . . the City of Turlock has granted to the Turlock Irrigation District, a public corporation, a franchise and permission to construct . . . a power system . . . ", the use of the word "franchise" does not establish the nature of the right involved. In 26 C. J., page 1024, the rule is stated to be as follows:

"The fact that a grant is called a 'franchise' and that it is couched in terms frequently used in granting franchises is not conclusive as to its character. If the purpose is simply to provide regulations a franchise will not be created, even though the word 'franchise' is used."

It would therefore appear in this instance, a valid franchise existed in favor of the respondent, coming not from the municipality but from the state. If the proceeding by the city was not the granting of a franchise then the provisions of Henning's General Laws 1920, Act 3094, section 861, which provides that no ordinance granting any franchise can be passed on the day of its introduction, nor within five days thereafter, nor at any other than a general meeting, was inapplicable.

The contention also of appellants that a violation of the rules of the railroad commission by the irrigation district constituted negligence *per se*, is likewise not tenable. If this were the rule it would have the effect of substituting the regulations of the railroad commission for the discretion and judgment of the trustees of a city, and would in effect hold that no incorporated city had any discretion in determining the extent to which the streets of the city might be subject to various uses, and no discretion as to what were reasonable or necessary regulations for the use thereof. Also, if the rules of the railroad commission were held to establish as a matter of law, the measure of ordinary care, it would do away with the principle that negligence is a question for the jury to determine from the facts in the particular case. That negligence and contributory negligence are proper questions for a jury has been long settled in this state. (*Carty* v. *Boeseke-Dawe Co.,* 2 Cal. App. 646, 648 [84 Pac. 267]; *Davoust* v. *City of Alameda,* 149 Cal. 69 [84 Pac. 760, 9 Ann. Cas. 847, 5 L. R. A. (N. S.) 536]; *Pittman* v. *City of Riverside,* 128 Cal. App. 57 [16 Pac. (2d) 768]; *Eldridge*

v. *Clark & Henery Const. Co.,* 75 Cal. App. 516 [243 Pac. 43].)

Further objection by appellant is that the court erred in granting continuances. Two reasons are assigned, first, that the continuances were not upon a proper showing or foundation, and secondly, that the plaintiffs were prejudiced by the long interval between the presentation of their evidence and that of the defendant.

As to the first point that the continuances were not made upon proper showing, appellant in effect claims that a continuance granted on motion in open court violates the provisions of section 595 and section 2027 of the Code of Civil Procedure, and the filing of an affidavit in support of a continuance is jurisdictional and that the court has no discretion to grant a continuance in the absence of such affidavit. That a showing for a continuance may be made by affidavit or by other proof is established by *Bassi* v. *Walden,* 64 Cal. App. 764 [222 Pac. 866]. A case very similar to the case here in point is *Neil* v. *Gane,* 124 Cal. App. 51 [12 Pac. (2d) 131]. In that case considerable delay was caused and continuances granted because of failure to stipulate as to the taking of a deposition or to submit cross-interrogatories. The court there said, quoting from *Flynn* v. *Fink,* 60 Cal. App. 670 [213 Pac. 716]:

"On a motion for continuance of a trial of a case, it is the duty of the trial judge, which the law presumes he will faithfully perform, to work out the justice of the situation; his action in the exercise of a sound discretion is final and cannot be disturbed."

In regard to the complaint of the plaintiffs that they were prejudiced by the length of time between the presentation of their evidence and that of defendant, the record discloses that defendant was endeavoring to locate Florence Winkie, one of the plaintiffs, and in their search they requested counsel for plaintiffs to advise them of the whereabouts of plaintiff, and inquired of the parents of plaintiff, and from other sources, all shown by affidavit, but defendant failed to get any assistance from these sources, and so the delay could not be charged to any fault on the part of the defendant.

Another objection of appellants was that counsel for defendant committed prejudicial error, and the court erred

in its instructions with respect to the absence and failure of Florence Winkie to testify. It will be recalled that plaintiff took the deposition of Florence Winkie but did not offer the same in evidence, and when defendant offered the same as a part of its case objection was made that it was not properly verified, and the objection sustained. Counsel for defendant, in his argument, alluded to unsuccessful efforts that had been made to locate Florence Winkie, and told the jury they were entitled to assume that upon any facts within her knowledge the testimony of Mrs. Winkie would have been adverse to plaintiff, and for that reason she was not called by plaintiffs as a witness, nor her testimony given. At the request of defendant the court in effect instructed the jury that the non-appearance of a litigant at the trial or her failure to testify, by deposition or otherwise, as to material facts within her knowledge, unless satisfactorily explained, created an inference that she refuses to testify because the truth, if made to appear, would have been adverse to her. Plaintiffs claim the argument and instruction amounted to a charge that plaintiff was willfully suppressing the evidence. We cannot so hold.

It is within the legitimate range of argument for counsel to comment upon the failure of the opposing party to produce certain persons as witnesses unless the witness is equally available to both parties. Here, plaintiff Florence Winkie was not equally available to both parties; defendant, after due diligence, was unable to locate her. The testimony in the deposition, properly subscribed by the witness was material, and in part unfavorable to plaintiffs, and in part favorable to defendant. These facts refuted the charge that the statement and instruction constituted reversible error.

We find nothing in the record or in the argument of appellants that would justify a reversal.

The judgment entered herein should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.